UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>JOHN THOMAS ABRAMS,<br><br>Defendant. | Case No. 3:14-cr-00069-MMD-WGC<br><br>ORDER |

## I.  INTRODUCTION

On February 25, 2016, the jury returned a verdict of guilt on two counts of kidnapping and one count of transportation of a minor for purpose of illegal sexual activity. (ECF No. 222.) Defendant John Thomas Abrams had elected to represent himself and was appointed stand-by counsel. (ECF No. 80.) After the verdict of guilt, the Court permitted stand-by counsel to withdraw, and at Abrams' request, the Court appointed counsel to represent him for the remainder of the proceedings. (ECF No. 250.) On July 18, 2016, Abrams filed a counseled motion for new trial (ECF No. 276), which the Court denied (ECF No. 290). The Ninth Circuit Court of Appeals subsequently affirmed. (ECF No. 316.)

On November 5, 2019, Abrams, proceeding *pro se*,[1] filed a motion for new trial based on newly discovered evidence, contending that the discovery materials in this case were confiscated at the state prison where he was serving a state sentence before trial ("Motion"). (ECF No. 341.) Abrams also filed a motion for appointment of counsel.[2] (ECF

///

---

[1] On July 17, 2019, the Court permitted appointed counsel to withdraw after Abrams exhausted his appeal. (ECF No. 325.)

[2] Abrams filed the identical motion as a "Motion for New Trial-New Evidence" (ECF No. 340) which the Court will address as a motion for appointment of counsel.

No. 339.) The government opposed the Motion (ECF Nos. 345, 347 (corrected response)), and moved to strike a supplement that Abrams filed without leave of court (ECF No. 349).[3]

Having reviewed the briefs relating to the motions before the Court and the underlying records, the Court denies Abrams' Motion and his motion for appointment of counsel. The Court also grants the government's motion to strike.

## II. BACKGROUND

### A. Indictment and Conviction

John Thomas Abrams[4] was indicted on September 17, 2014, which was superseded on July 22, 2015. (ECF Nos. 2, 65.) The Superseding Indictment charged Abrams with two counts of kidnapping in violation of 18 U.S.C. § 1201 and one count of transportation of a minor for purpose of illegal sexual activity in violation of 18 U.S.C. § 2423(a). (ECF No. 65.) Abrams had picked up two 15-year-old victims, who were running away from home, and promised them a ride to Roseville, California, where one of them had family. However, over the course of the 10 days that they were with Abrams, between July 12, 2012 and July 22, 2012, Abrams was found to have used deception and threats to kidnap them, drove them to Nevada, and raped the female victim, A.R, before and after they arrived in Reno.

Trial commenced on February 16, 2016. (ECF No 207.) Abrams was convicted of all counts on February 25, 2016. (ECF No. 222.)

///

---

[3]Aside from filing the supplement to the Motion (ECF No. 348), Abrams also filed a document titled "Judicial Notice of Deliberate Denial of Access of the Courts" (ECF No. 342) where he asserts his allegations about materials in this case being confiscated by order of the warden of the prison where he was held pending trial. As the government points out (ECF No. 346), allegations made by Abrams are not matters which the Court can take judicial notice. *See e.g.*, *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (explaining that a court may take judicial notice of a government agency's records and other undisputed matters of public record under Federal Rule of Evidence 201). Thus, to the extent Abrams requests that the Court take judicial notice that his materials were confiscated, his request is denied.

[4]Abrams went by other names, including John Walker (Case No. 3:16-cv-00258-MMD-WGC). (ECF No. 2 (indictment identifying other names that Abrams was known by).) He testified that his true name is David George Garnett. (ECF No. 270 at 9.)

### B. Procedural History

A consistent theme in Abrams' filings and the Motion, whether counseled or *pro se*, has been the repeated complaints that he did not have access to relevant materials, resources and witnesses to prepare for trial. (*See* ECF No. 290 at 2–6.) Accordingly, the Court will provide a brief recap of the procedural history and the measures taken to address these complaints.[5] (*Id.*)

When he was indicted, Abrams was serving a state sentence in the custody of the Warden of the Northern Nevada Correctional Center ("NNCC") within the Nevada Department of Corrections ("NDOC"). (ECF No. 1.) While he had been transported between NNCC and the Washoe County Detention Facility ("WCDF") for appearances in this case, Abrams was held at WCDF after the January 26, 2016 status conference to allow him to prepare for trial. (ECF No. 119; ECF No. 301 at 27; ECF No. 304 at 7; ECF No. 307 at 32–33.)

On July 14, 2015, the Court granted Abrams' initial counsel's (Deputy Federal Public Defender Lauren Gorman) motion to withdraw and appointed substitute counsel, Loren Graham, to represent Abrams. (ECF Nos. 59, 63.) On August 31, 2015, Abrams moved to proceed *pro per*, citing "serious cooperation issues" with his appointed counsel. (ECF No. 73.) At a hearing held on the same day, the Court permitted Abrams to withdraw his motion to proceed *pro per* and continued trial to January 19, 2016. (ECF No. 76.) About two months later, Abrams' counsel moved to withdraw and Abrams moved to represent himself. (ECF Nos. 79, 80.) On November 9, 2015, the Court granted Abrams' motion to proceed *pro per* and ordered the appointment of stand-by counsel for Abrams. (ECF No. 86.)

At a status conference held on January 11, 2016, the Court granted Abrams' oral request for his legal paperwork located at NNCC to be delivered to him at WCDF. (ECF

///

---

[5]Abrams apparently raised these same complaints in his appeal, which the court of appeals rejected. (ECF No. 316 at 4–6 ("The district court did not clearly err in finding that [Abrams] had received all relevant discovery materials.").)

No. 119.) The next day, January 12, the Court ordered NNCC to gather Abrams' documents and paperwork for collection and delivery by the U.S. Marshals ("USM") to Abrams at WCDF on the same day; and ordered WCDF to give Abrams supplies and $100 in credit for copywork to be used for trial preparation. (ECF No. 121.)

On January 14, 2016, Abrams filed yet another motion to recuse, which Judge Jones granted on January 19, 2016. (ECF Nos. 126, 134.) At a status conference held on January 26, 2016, the Court continued the trial to February 16, 2016, and addressed six motions Abrams filed over the course of two weeks. (ECF No. 145.) Abrams withdrew a prior *ex parte* motion proposing how he should be transported from NNCC to WCDF for trial and requested to be housed at WCDF pending trial. (ECF Nos. 145, 159.) The Court further directed stand-by counsel to notify the Court if Abrams had any problem accessing his legal materials and preparing for trial. (*Id.*)

Trial commenced on February 16, 2016, and continued for 8 days, until February 26, 2016, when the jury returned its verdict of guilt. (ECF Nos. 207, 220.) Judgment was entered on September 14, 2016. (ECF No. 293.)

**III.     MISCELLANEOUS MOTIONS**

      **A.     Motion for Appointment of Counsel (ECF Nos. 339, 340)**

Abrams argues that since his conviction he has discovered new evidence, during the course of pursuing two lawsuits filed in this Court in Case Nos. 3:15-cv-00508-RCJ-VPC and 3:16-cv-00628-MMD-WGC, that legal materials relating to this case were improperly confiscated.[6] (ECF No. 340 at 2–3.) He insists that counsel should be appointed to represent him in light of the discovery of this new evidence. (*Id.* at 4.) Because the Court finds that the evidence Abrams relies on does not amount to newly

///

///

---

[6]Abrams alleges that the "settlement agreements" in these two cases demonstrate that he "never gained access to the materials until a year after trial was over." (ECF No. 340 at 2.) However, the "settlement agreements" are not filed on the docket for these two cases, and Abrams offers no other support for this contention.

4

1 discovered evidence, and moreover do not meet the stringent standard under Federal
2 Rule of Evidence 33(b), the Court denies Abrams' motion for appointment of counsel.

### B. Motion to Strike (ECF No. 349)

Abrams filed his Motion after two motions for extension of time were granted. (ECF Nos. 333, 337.) Yet, about two weeks after he filed his Motion and on the same day as the filing deadline for the government's response, Abrams filed a document titled "Memorandum in Support of Motion for New Trial/New Evidence" (ECF No. 340) without seeking leave of court. That document essentially reiterates and expands on the arguments raised in his Motion. The Court agrees with the government that the document amounts to an improper attempt to supplement Abrams' Motion and will grant the government's motion to strike the same (ECF No. 349).

## IV. MOTION FOR NEW TRIAL (ECF NO. 341)

Pursuant to Federal Rule of Criminal Procedure 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33(b) limits the ground of a motion for a new trial filed after 14 days but within 3 years[7] to newly discovered evidence. The Ninth Circuit Court of Appeals in *United States v Harrington,* 410 F.3d 598, 601 (9th Cir. 2005), reiterated a five-part legal test to examine a motion for a new trial grounded on newly discovered evidence. *See also United States v. Hinkson,* 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc). Under that test, a defendant is required to show that "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *Harrington,* 410 F.3d at 601 (quoting *United States v. Kulczyk,* 931 F.2d 542, 548 (9th Cir. 1991)).

///

---

[7] Abrams filed his Motion on November 5, 2019 (ECF No. 241), which was one day after the deadline extended at his request. (ECF No. 337 (granting extension to November 4, 2019, to file motion for new trial).) Nevertheless, the Court will deem the Motion as timely filed.

5

The Court finds that Abrams has not demonstrated at least the first, fourth and fifth *Harrington* factors and will address these factors, opting not to address the remaining two factors.

### A. Lack of Newly Discovered Evidence

It is well established that "a defendant seeking a new trial on the basis of newly discovered evidence must show that 'the evidence relied on is, in fact, newly discovered, i.e., discovered after the trial." *United States v. McKinney,* 952 F.2d 333, 335 (9th Cir. 1991) (quoting *Pitts v. United States,* 263 F.2d 808, 810 (9th Cir.), *cert. denied,* 360 U.S. 919 (1959)). Evidence that could have been obtained at any time or that was disclosed during trial does not satisfy the first factor of the *Harrington* five-factor test. *See Harrington*, 410 F.3d at 601 (finding that "photographs and street map [that] could have been obtained at any time" and testimony at a preliminary hearing that were captured on tape which could have been obtained by counsel during trial are not "newly discovered evidence").

Abrams argues in gist that the newly discovered evidence consists of materials relevant to his case that were provided to him by the government and former counsel on "CDs and thumb drives" before trial, but were confiscated and not returned to him until a year after the trial[8]. (ECF No. 341 at 5 (alleging "NDOC employee Pauline Simones admitting that discovery stored on CD's were held from the Defendant[9]"; "all case relevant materials on CD's and thumb drives were held by Warden Warol and never returned until a year after the trial was over").) Notably, Abrams does not claim that the government

///

---

[8]Abrams repeats his contention that he asked the Court to address his complaints that he was denied access to discovery materials before and during trial but his requests were denied. (ECF No. 341 at 4–5, 19–21; ECF No. 353 at 1–2, 4–8.) These arguments are not proper grounds for a new trial under Rule 33(b). Moreover, the Court considered and rejected these arguments in its prior order. (ECF No. 290 at 2–6.)

[9]The FBI 302 interview of Simones that Abrams relies on (ECF No. 341-1 at 2) was provided by the government in response to Abrams' prior counseled motion for a new trial (ECF No. 278-2 (complete statement consisting of three pages).) Simones states in her interview that Abrams "was never denied anything other than access to his compact disks (CD) and thumb drives. . . . [Abram] was also advised that he could have legal counsel print everything from the thumb drives or CDs and delivered to him." (ECF No. 3411 at 2; ECF No. 278-2 at 3.) And Abrams' stand-by counsel did just that. (ECF No. 301 at 13, 19–22.)

6

failed to provide relevant materials; instead, he argues that relevant materials from the government saved on the CDs and thumb drives were confiscated by NDOC officials.

Abrams has not demonstrated that the evidence he relies on is "newly discovered." As the government points out, evidence which a defendant is aware exists during trial is not "newly discovered" because the evidence later became available. *See United States v. My-Huong Thi Hoang*, 232 F. App'x 685, 687 (9th Cir. 2007).

Even assuming that the confiscated CDs and thumb drives contain materials relating to this case, the records reflect that these materials were given to Abrams and stand-by counsel before trial and were available for his use. In a January 8, 2016 order, the Court addressed Abrams' complaint that he had not received discovery materials and other information pertaining to this case:

> The Government asserts that at Defendant's request it provided to Defendant's advisory counsel, Mr. Cameron, a complete copy of all previous discovery disclosures, including 964 pages, even though it had previously provided the same materials to Defendant. (Government's Resp., 4–5, n.2, ECF No. 91). Mr. Cameron's office retrieved the materials on December 4, 2015. (*Id.*). On December 16, 2015, Mr. Cameron delivered to Defendant hard copies of 960 pages of discovery material and spent more than seven hours reviewing the material with him. (Notice to the Court, Dennis A. Cameron, 1, ECF No. 100). On December 22, 2015, Mr. Cameron delivered to Defendant hard copies of an additional 1,100 pages of discovery that Defendant had not seen. (*Id.* at 2). Mr. Cameron spent another four and one half hours reviewing that material with Defendant. (*Id.*). On December 29, 2015, the Government sent to Defendant via FedEx a third complete copy of its discovery materials in hard copy form. (Government's Resp. to Mot. to Show Cause and/or Compel, 2–3, 10, ECF No. 99). Defendant, directly or through his advisory counsel, has now received three copies of discovery from the Government, and his counsel has spent at least eleven hours reviewing discovery materials with him.

(ECF No. 112 at 3.) The Court further found that Abrams had indicated in an earlier motion that he "has received 'discovery, investigator notes, and the notes from prior defense counsel.'" (*Id.* at 4.)

///
///
///
///

At a status conference held on January 11, 2016,[10] stand-by counsel represented that he had arranged to provide hard copies of the discovery from the government and additional discovery from prior counsel[11] (ECF No. 301 at 13, 19–22), that he had materials on the disks that the warden had confiscated (*id.* at 27), but he asked for an order for USM to transport "2200 pages of copied material back at the prison that he doesn't have with him now and will probably not get" to WCDC (*id.* at 28). The Court granted that request. (*Id.*; ECF No. 121 (order directing the NDOC to transfer "all of Defendant's paperwork and documents in its possession, including from his cell, locker and the property room" to the USM).)[12]

And at the January 26, 2016 status conference, Abrams withdrew a motion to be transferred back to NNCC, representing that he had his "material" and access to a computer and his stand-by counsel at WDCF. (ECF No. 307 at 32–33.) At the same status conference, his stand-by counsel summarized his efforts to provide all materials, including disks from the government's counsel (AUSA Higginbotham) and Abrams' former counsel, to Abrams to permit him to review them in time for trial. (*Id.* at 14–20.)

In sum, Abrams has not demonstrated that the evidence he now relies on are newly discovered and are not duplicative of the information contained within the materials provided to him and stand-by counsel. In fact, the evidence before the Court supports a finding that these same materials were provided to him before trial.

///

---

[10]Abrams alleges that a transcript of this status conference (at page 20 of 56) attached to his Motion shows the 1100 pages were blank and never recopied. (ECF No. 341 at 6.) The Motion did not attach the referenced transcript, but the transcript on the docket (ECF No. 301) does not support his claim that the pages were blank or that he was not given these documents.

[11]At the same status conference, the government's counsel described materials that have been provided and the number of times they had been provided—to Abrams' initial counsel, to Abrams' second appointed counsel, to Abrams' stand-by counsel, and then to Abrams himself while he was at NNCC. (ECF No. 301 at 17.)

[12]Abrams now claims NDOC did not comply with the order (ECF No. 353 at 4). But at the January 26, 2016 status conference, stand-by counsel represented that NDOC did comply with the order though there was a three-day delay. (ECF No. 307 at 16.)

In fact, during trial Abrams made use of some of the evidence that he now claims was not available to him. For example, Abrams claims that McDonald's "commitment to mental health court and the cause (particular illness) was not provided for before trial and was not fully known until investigation notes were read in 2/9/17 on CD's that had been provided by the Federal Public Defender's Office [Abrams' initial appointed counsel] and then was confiscated by NNCC . . .." (ECF No. 341 at 12–13.) However, during his cross-examination of McDonald, Abrams asked her about mental health court and her mental illness:

> Q. Okay. Were you ever involved with mental heath court system here in Reno?
> A. I am in mental health court.

(ECF No. 264 at 120 (Trial Transcript ("Tr.") at 551:11–13).)

> Q. What is your mental health diagnosis, Ms. McDonald?
> A. Schizophrenia.
> Q. Is that the only diagnosis?
> A. Yes.
> Q. What is the side effects of schizophrenia?
> A. Hmm, hallucinating, delusions.

(*Id.* at 121–22 (Tr. at 552:25–553:5).)

As another example, Abrams contends that the two victims told law enforcement that Abrams was going to Reno to locate "Allie" while there was trial testimony that Abrams was "leaving California because he had been told that law enforcement was looking for him and the van along with the alleged victims." (*Id.* at 18.) Here again Abrams cross-examined Detective Brian Kinney about the same evidence that he now claims to have discovered only after the trial:

> Q. Matter of fact, during your investigation, didn't they claim that I was going to Reno to look for a girl named Ally?
> A. Yes.

(ECF No. 269 at 193–93 (Tr. at 1152:25–1153:2).)

In sum, Abrams has not demonstrated that the evidence he now relies on are "newly discovered" to satisfy the first *Harrington* factor.

///

1 **B.  Cumulative/Impeaching Evidence**

Abrams describes the evidence that he claims to have discovered after the trial as the type that would discredit the testimony of witnesses. However, "evidence that would merely impeach a witness cannot support a motion for a new trial." *Kulczyk*, 931 F.2d at 549. And Abrams' cited evidence are also cumulative since they are the same or variations of what Abrams offered during the trial. The Court recaps Abrams' claimed newly discovered evidence below.

Abrams relies on a notation in the Lodi police report that on July 22, 2012, A.R.'s mother had reported that "there was activity on her runaway daughter's facebook page earlier that same day." (ECF No. 341 at 9.) He argues that this information shows that A.R. "updated her facebook page with her cell phone from Yatchclub Drive in Stockton California" and "contradicts her testimony that she was being held against her will during the very same period of time." (*Id.*) He goes on to further argue why this police report would corroborate his testimony that both victims were not held against their will and would discredits A.R.'s testimony. The evidence is thus merely impeachment evidence that does not suffice under the fourth *Harrington* factor. Moreover, at trial Abrams did use this evidence to impeach Detective Brian Kinney, asking him if he was aware that that A.R. updated her Facebook on July 22 from Stockton California on Yatch Club Drive[13]. (ECF No. 269 at 165 (Tr. at 1124:10–14).) He also asked Detective Kinney repeated questions about the victims having access to three devices from July 12 to July 22. (*Id.* at 189–92 (Tr. at 1148–1151).)

Abrams relies on records relating to McDonald's involvement in mental health court and her mental illnesses that he claims were within the confiscated materials not available to him during trial. (ECF No. 341 at 12.) However, as Abrams noted, the Court had denied his request for the government to provide the history of McDonald's mental health. (*Id.* at

///

---

[13]This supports the Court's finding that this information—that A.R. had posted on her Facebook—was available to him during the trial, thus discrediting Abrams' assertion to have discovered this evidence only after the trial.

10

12; ECF No. 307 at 32.) Thus, the evidence that he now claims to have discovered after trial—records relating to McDonald's mental health—would have been excluded. Moreover, as discussed *supra*, Abrams did cross-examine McDonald about her participation in mental health court and her mental health diagnosis. Abrams solicited such testimony to impugn McDonald's credibility and now relies on the same evidence which he claims to have discovered after the trial, to again argue that they would be used to discredit McDonald's testimony. Moreover, the evidence would have been cumulative given that Abrams cross-examined McDonald on similar issues.

Abrams relies on the documents governing protocols and processes for investigating sexual assaults to attack the investigation that led to his indictment. (ECF No. 341 at 14–16.) He complained, *inter alia*, that law enforcement did not follow established departmental policy in investigating sexual assaults and to timely obtain forensic evidence, that they failed to transport the victim to the University of California, Davis Medical Center for sexual assault examination, and that he was not interviewed before trial.[14] (*Id.*) Here again the evidence falls within the impeachment category and is cumulative. For example, Abrams cross-examined Detective Kinney about the lack of forensic evidence of the sexual assault. (ECF No. 269 at 192 (Tr. at 1151).) He questioned Officer Daniel Swafford about the lack of a rape or medical examination of A.R. during the course of his initial investigation, and whether it was possible to obtain forensic evidence even after 72 hours has elapsed. (*Id.* at 69, 80–81, 86–88 (Tr. at 1028, 1039–40, 1045–47).)

Abrams contends the audio recordings of police's interviews of victims[15] and witness (McDonald) "totally impeach the testimony of the witnesses that are presented by

///

---

[14] Abrams raised the issue of his interview—that the government did not interview him before the charges in this case were brought—during the course of the trial. (*See e.g.,* ECF No. 270 at 148–49, 153–58.)

[15] Abrams tried to use an unofficial transcript of audio recordings of the police interview of the male victim during his cross-examination of the victim at trial. (ECF No.

11

the government and calls the alleged victims credibility into question."[16] (ECF No. 341 at 17.) Again, the recordings in his own estimation amount to impeachment evidence and are cumulative.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion because they do not affect the outcome of the motions before the Court.

It is therefore ordered that Abrams' motion for a new trial (ECF No. 341) is denied.

It is further ordered that Abrams' motion for appointment of counsel (ECF Nos. 339, 340) is denied.

It is further ordered that the government's motion to strike (ECF No. 349) is granted.

The Clerk of the Court is directed to strike Abrams' improper supplement docketed as ECF No. 348.

DATED THIS 13th day of April 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

264 at 151–52 (Tr. at 582: 22–23; 583:8–20 (Abrams representing that he was referring "the transcript of the audio" that he got from his former counsel's files)).)

[16]Abrams claims that coercive technique was used during an interview with McDonald and raises other arguments that are not unelated to his claim of newly discovered evidence. (ECF No. 341 at 21–22.) These arguments are not proper grounds for a new trial under Rule 33(b) and the Court will not addressed them.

12